IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 24, 2018

**TIMOTHY EVANS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Hamilton County
Nos. 285646 & 285934    Tom Greenholtz, Judge**

_____

**No. E2017-00400-CCA-R3-PC**

_____

The Petitioner, Timothy Evans, appeals from the Hamilton County Criminal Court's denial of his petition for post-conviction relief. The Petitioner contends that trial counsel was ineffective (1) for failing to have the Petitioner "evaluated in order to present an insanity or diminished capacity defense"; (2) for failing to call "a psychological expert" to support the Petitioner's duress defense; (3) for failing to "adequately prepare" the Petitioner to testify on cross-examination; and (4) for "depriving [the] Petitioner of a review of his duress [defense] by the appellate courts" by failing to include portions of the trial transcript in the appellate record. Discerning no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Donna Miller, Chattanooga, Tennessee, for the appellant, Timothy Evans.

Herbert H. Slatery III, Attorney General and Reporter; Linda D. Kirklen, Assistant Attorney General; M. Neal Pinkston, District Attorney General; and Bates W. Bryan, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL BACKGROUND**

The Petitioner was convicted by a jury of first degree premeditated murder, conspiracy to commit first degree premeditated murder, and "carrying a dangerous weapon." State v. Timothy Evans & Michael Daniels, No. E2009-01627-CCA-R3-CD, 2011 WL 3667722, at *1 (Tenn. Crim. App. Aug. 22, 2011), perm. app. denied (Tenn.

Mar. 27, 2013).  The trial court imposed a total effective sentence of life imprisonment for the convictions.  Id.

The Petitioner was tried along with his co-defendant, Michael Daniels.  Evans, 2011 WL 3667722, at *1.  There was no dispute that on June 13, 2006, the Petitioner shot and killed the victim, Adrian "A.D." Patton, as there were several eyewitnesses to the killing.  Id. at *1-6.  The victim had been accused of shooting at the co-defendant's sister's house.  Id. at *2.  The co-defendant and the victim were discussing this when the co-defendant walked away from the victim and spoke to the Petitioner.  Id. at *2, 4-5.  One eyewitness overheard the co-defendant, who was a leader in the Petitioner's gang, tell the Petitioner to "handle that s--t" just before the shooting.  Id. at *3.

The Petitioner then walked up to the victim, who was sitting in the driver's seat of his truck, and fired eight or nine shots at the victim.  Evans, 2011 WL 3667722, at *2.  The victim said, "'[D]o you believe this mother f--kin['] s--t,'" and attempted to drive away.  Id. at *6.  Blood was "'shooting out [of the victim's] chest . . . like somebody shooting a water hose,'" and he drove only a short distance before the truck crashed into an apartment building.  Id.  The victim was dead before police were able to respond to the shooting.  Id.

The Petitioner testified at trial that his co-defendant was the leader of "the Skyline Bloods in Chattanooga."  Evans, 2011 WL 3667722, at *8.  The Petitioner explained that he had "'no choice'" and that "he would be punished if he did not do" what his co-defendant told him to do.  Id.  The Petitioner testified that his co-defendant told him to kill the victim and that when he hesitated, his co-defendant started "walking toward [the Petitioner] and reaching for [his] gun."  Id.  The Petitioner further testified that "the victim's death was not planned" and that after the shooting, "he could not eat, sleep, or stop moving" because "his conscience was bothering him . . . [for having] killed a man for no reason."  Id. at *8-9.

This court affirmed the Petitioner's convictions on direct appeal.  Evans, 2011 WL 3667722, at *1.  The Petitioner filed a pro se petition for post-conviction relief.[1]  Subsequent amended petitions were also filed on the Petitioner's behalf.  However, some of the amended petitions and portions of the Petitioner's original pro se petition were not included in the record on appeal.[2]  The Petitioner was ultimately granted a delayed appeal to our supreme court, and his other post-conviction claims were held in abeyance.  On March 27, 2013, our supreme court declined to review this court's decision on direct appeal.  As we are able to glean from the post-conviction court's order denying relief and

---

[1] This opinion will only address the issue raised in the Petitioner's appellate brief.

[2] We note that "[i]t is the appellant's duty to compile the record necessary for resolution of the issues presented to an appellate court."  State v. Majors, 318 S.W.3d 850, 865 n.12 (Tenn. 2010).

as is pertinent to our review, the petitions alleged that trial counsel was ineffective for failing "to request a forensic mental evaluation," for failing "to call a psychological expert to testify" in support of the Petitioner's duress defense, and for failing "to adequately prepare [the Petitioner] to testify on his own behalf."

At the outset of the post-conviction hearing, the Petitioner's post-conviction counsel was addressing trial counsel's having not requested "an expert on the defense of duress" when the post-conviction court asked her if duress was "argued during the trial." Post-conviction counsel responded that she anticipated trial counsel's testifying that it was, but that this court on direct appeal "refused to consider [the] issue [of duress,] finding that the record was deficient" because the opening statements, closing arguments, and jury instructions were not included in the direct appeal record.

Trial counsel was the sole witness at the post-conviction hearing. He testified that he argued duress during the trial and that the jury was ultimately instructed on the issue. Trial counsel explained that duress was the only defense available to the Petitioner because three eyewitnesses saw the Petitioner shoot the victim and the Petitioner later confessed to one of the witnesses. Trial counsel testified that he attempted to get the State to make a plea offer in exchange for the Petitioner's testifying against his co-defendant, but that the State would not make an offer because the evidence against the Petitioner was so overwhelming. Trial counsel also sought a severance of the Petitioner and co-defendant's trials because he felt that they had mutually antagonistic defenses, but the trial court denied the severance motion.

Trial counsel testified that he did not seek a pretrial mental evaluation of the Petitioner because the Petitioner "understood what was going on [and] he was able to go ahead and engage and participate in his defense." Put another way, there was nothing to suggest to trial counsel that a mental evaluation was warranted. Regarding seeking a psychological expert to testify in support of the Petitioner's duress defense, trial counsel testified that he felt the Petitioner's testimony would be the most powerful evidence of duress. Trial counsel further explained that he did not think that the jury would have responded well to an expert's testifying about duress in general terms or that such testimony would have been helpful.

Trial counsel testified that he and his investigator spoke to the Petitioner numerous times about testifying at trial and that they "explained to him what [they] were needing and what his primary defense was going to be." Trial counsel thought that the Petitioner "did very well on direct" and that the State's cross-examination did not "hurt [his] testimony that much." However, trial counsel admitted that co-defendant's counsel had asked the Petitioner if he would have shot the trial judge, trial counsel, and the prosecutors if instructed by the co-defendant and the Petitioner responded that he would.

Trial counsel felt "that was pretty powerful testimony" that caused the jury to worry that the Petitioner was "a danger."

Post-conviction counsel asked trial counsel if this court "could not decide on the issue of duress" because certain transcripts were not included in the record. Trial counsel responded that this court found the evidence sufficient to sustain the Petitioner's convictions. At the conclusion of the post-conviction hearing, the post-conviction court stated that the issue of whether trial counsel was ineffective for not including transcripts of the opening statements, closing arguments, and jury instructions in the appellate record had not been raised in any of the petitions. However, post-conviction counsel then argued that this court did not consider the issue of duress because the record was incomplete.

On January 25, 2017, the post-conviction court entered a written order denying post-conviction relief. The post-conviction court concluded that the Petitioner had failed to present clear and convincing evidence "that trial counsel should have been aware of the need for a mental evaluation" or that the Petitioner "was actually suffering from a mental health issue or condition at the time of the offense[s]." Likewise, the post-conviction court concluded that the Petitioner had failed to present an expert on duress at the post-conviction hearing "to show the testimony that such an expert might have given" at trial. Additionally, the post-conviction court found that trial counsel's decision not to use an expert witness to support the duress defense was a strategic trial decision. The post-conviction court also concluded that the Petitioner had failed to establish his claim that trial counsel did not adequately prepare him to testify at trial by clear and convincing evidence. This appeal followed.

**ANALYSIS**

The Petitioner contends that he received ineffective assistance of trial counsel. The Petitioner argues that trial counsel was ineffective for failing "to seek a mental evaluation" because he "suffered a nervous breakdown after the shooting" and the stress of the shooting "may have rendered him insane." The Petitioner also argues that trial counsel was ineffective for failing to use a "psychological expert" at trial because such an expert "could most certainly have bolstered" the Petitioner's claim of duress and that he should not have been required to call such an expert at the post-conviction hearing because there was no funding available to secure an expert. The Petitioner further argues that trial counsel was ineffective for failing "to properly prepare him for cross[-]examination." Finally, the Petitioner argues that trial counsel was ineffective because this court "refus[ed] to review [the] Petitioner's duress defense" due to trial counsel's failure to include certain portions of the trial transcript in the appellate record. The State responds that the post-conviction court did not err in denying the petition.

-4-

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. However, we review the post-conviction court's application of the law to its factual findings de novo with no presumption of correctness. Id. at 457.

Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. Dellinger, 279 S.W.3d at 293 (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). In reviewing a trial counsel's conduct, we make every effort to "'eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" Felts v. State, 354 S.W.3d 266, 277 (Tenn. 2011) (quoting Strickland, 466 U.S. at 689).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. "The fact that a particular strategy or tactical decision failed does not by itself establish deficiency." Felts, 354 S.W.3d at 277 (citing Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996)). Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad, 938 S.W.2d at 370. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

With respect to the Petitioner's claims that trial counsel was ineffective for failing to seek a mental evaluation or to present an expert witness to support his duress defense, this court has long held that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Generally, "this is the only way the petitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner." Id. We cannot speculate as to what a witness may have said if presented or how the witness may have responded to a rigorous cross-examination. Id.

There was no evidence presented at the post-conviction hearing that the Petitioner suffered from any mental condition that would have warranted a mental evaluation. Trial counsel testified that nothing in his interactions with the Petitioner suggested that such an evaluation was warranted. Furthermore, the Petitioner failed "to present the testimony of an expert at the evidentiary hearing to explain what, if any, mental health evidence trial counsel should have advanced at trial." Demario Johnson v. State, No. W2011-02123-CCA-R3-PC, 2013 WL 772795, at *8 (Tenn. Crim. App. Feb. 27, 2013). Likewise, the Petitioner presented no "psychological expert" or any other evidence to establish how such an expert would have bolstered the Petitioner's duress defense.

On appeal, the Petitioner contends that he should not be faulted for failing to present expert witnesses because there was no funding available to secure such experts. However, after "careful consideration of the cases and constitutional provisions" our supreme court has held that "the state is not required to provide expert assistance to indigent non-capital post-conviction petitioners." Davis v. State, 912 S.W.2d 689, 696-97 (Tenn. 1995). Accordingly, we conclude that the post-conviction court did not err in denying relief on these issues.

With respect to the Petitioner's claim that trial counsel failed to adequately prepare him for cross-examination, trial counsel testified that he and his investigator spoke to the Petitioner about testifying at trial and "explained to him what [they] were needing and what his primary defense was going to be." More importantly, we note that the Post-Conviction Procedure Act requires a petitioner to testify at the post-conviction hearing "if the petition raises substantial questions of fact as to events in which the petitioner participated." Tenn. Code Ann. § 40-30-110(a); see also Tenn. Sup. Ct. R. 28, § 8(C)(1)(b) (stating the same). Because the Petitioner did not testify at the post-conviction hearing, he has failed to establish his factual allegations with respect to this issue by clear and convincing evidence. Therefore, the post-conviction court did not err in denying relief on this issue.

Finally, our opinion on direct appeal belies the Petitioner's claim that this court "refus[ed] to review [his] duress defense" because certain portions of the trial transcript were not included in the appellate record. A contention that the trier of fact erred in rejecting a defendant's duress defense is a challenge to the sufficiency of the convicting evidence. See State v. Malcolm H. Jones, No. E2011-02082-CCA-R3-CD, 2012 WL 6176770, at *3-5 (Tenn. Crim. App. Dec. 11, 2012). The Petitioner raised the issue of the sufficiency of the evidence on direct appeal, and this court held that the evidence was sufficient to sustain the Petitioner's convictions. Evans, 2011 WL 3667722, at *9-11.

In a footnote during the analysis of whether the trial court erred in denying the Petitioner's severance motion, the opinion states "the record does not reflect that [the Petitioner] formally argued a defense of duress . . . or that the trial court instructed the jury on the defense" because "the opening statements, the closing arguments, and the trial court's jury instruction [were] not in the appellate record." Evans, 2011 WL 3667722, at *12 n.3. However, this footnote was in reference to the Petitioner's argument that he and the co-defendant had mutually antagonistic defenses. Id. at *12. Nevertheless, this court affirmed the trial court's denial of the severance motion on the merits. Id. Accordingly, we conclude that this issue is without merit.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE